SCHOOL DISTRICT No. 10 IN UXBRIDGE *vs.* RICHARD D. MOWRY & others.

Under Gen. Sts. c. 38, §§ 23, 24, the authority and duty of the school committee of a town are not confined to ascertaining by examination the literary qualifications of teachers selected by the prudential committee, and their capacity for the government of schools; but they are the sole judges of their qualifications in all respects to teach and govern the school for which they are selected.

If the school committee of a town have refused to give a certificate of qualifications to a person selected by the prudential committee of a school district as a teacher of its school for the winter, and the prudential committee have given notice to the school committee that they shall not employ another person, and two months of the usual time of having a winter school in the district have elapsed, the school committee may properly employ a teacher and take possession of the school-house for the purpose of establishing a school.

TORT against the school committee of the town of Uxbridge, for breaking and entering the plaintiffs' school-house, and also for refusing to approve of a teacher whom the plaintiffs' prudential committee had employed to keep their school.

At the trial in the superior court, before *Allen*, C. J., the plaintiffs offered to prove that the town of Uxbridge authorized the prudential committee in the several school districts to hire teachers, according to the provisions of the statutes, and that the plaintiffs' prudential committee contracted with a person to teach their school for three months from the first Monday of December 1862, which was the usual time for commencing the school and presented her to the defendants for examination that the defendants found her to be of good moral character and possessed of the requisite literary qualifications and general

capacity to govern, but refused to give her a certificate for the reason that difficulties existed in the district in relation to her as a teacher, she having taught there before, and they thought she had better not engage in the same school again. It was admitted that on or about the 1st of December 1862, the prudential committee were informed that the school committee had refused to give the certificate, and that they gave notice to the school committee that they should not employ or present another person; and the school committee, after waiting until about the 1st of February 1863, employed a teacher, examined her and gave her the requisite certificate, took possession of the school-house for the purpose of establishing a school therein, and put her into the school, which she kept for the term of three months under the direction of the school committee.

Upon these facts, the plaintiffs contended that the defendants were not authorized to refuse to give a certificate to the teacher first employed, and to exercise the power of appointing one themselves, or to take possession of the school-house for the purpose of establishing the school; but the chief justice instructed the jury that the defendants were justified in their acts. A verdict was accordingly returned for the defendants, and the plaintiffs alleged exceptions.

*G. F. Hoar,* for the plaintiffs.

*P. E. Aldrich, (P. C. Bacon* with him,) for the defendants.

Hoar, J. The count in the plaintiffs' declaration which seeks to charge the defendants with a responsibility in damages for wrongfully refusing, as the school committee of the town of Uxbridge, to approve a teacher with whom the prudential committee of the district had contracted to teach their school, has not been relied on in the argument of the case, and is plainly without foundation in law. The school district has no corporate rights, duties or functions, and no relation to the school committee which would support such an action.

But the plaintiffs contend that the taking possession of their school-house for the purpose of establishing a school and employing a teacher therefor, was unlawful. The argument in support of this position is, that the school committee have no authority

to employ a teacher in towns which have authorized the prudential committees of the districts to select and contract with the teachers of the schools, except in the case provided for by Gen. Sts. c. 39, § 12, when "a school district neglects or refuses to establish a school and employ a teacher for the same."

It is conceded that a school had not been kept in the district for the time required by law during the current school year, at the time the defendants took possession of the school-house. The prudential committee had selected and engaged a teacher for the winter school, but she had failed to obtain from the school committee the certificate of qualifications required by law; and the prudential committee had notified them that they should not employ or present another person as a teacher of the school. Two months had expired after the usual time of commencing the winter school, before the defendants interfered. We think this presented such a case of failure on the part of the district to employ a teacher as fully justified the action of the committee.

But it is argued for the plaintiffs that the prudential committee had employed a teacher, who was found on examination to possess a good moral character, and the requisite literary qualifications and general capacity to govern, and that it was the duty of the general committee to give the requisite certificate; and that they could not take advantage of their wrongful refusal of the certificate in order to select a teacher, when that duty was intrusted by the vote of the town to the prudential committee.

This argument proceeds upon too narrow a view of the authority and duty of the school committee. The language of the statute does not confine them to an examination of the "literary qualifications" of the teacher, but the more comprehensive phrase is used, "qualifications for teaching." Upon these, in their widest sense, we are of opinion that the judgment of the committee is to be exercised; and that their decision is conclusive. Gen. Sts. c. 38, §§ 23, 24. It is obvious that a teacher might have the necessary literary acquirements and capacity to govern, and be a person of good moral character

and yet be an unfit person for the service required. Illustrations will readily occur. The committee might find an applicant to be really a person of good character, and yet of such reputation as would prevent the attendance of the scholars. A teacher might have personal habits or manners so offensive or peculiar as to make his influence upon the scholars injurious. He might be too severe in his requirements; inclined to devote too much time to the older or better scholars, at the expense of the younger or more ignorant; a person of strong prejudices; a decided partisan and propagandist in politics or religion; unskilful in imparting knowledge, or unable to appreciate the difficulties of beginners; and still be a person of sound morals, great learning, and undoubted capacity to govern. Yet all these considerations might very properly be regarded by the committee in determining his " qualifications for teaching."

The legislature intended to confide to the school committee the determination of the fitness of the teacher for his position and his work. This construction of the language of the statute is strengthened by the provision which authorizes the committee to dismiss a teacher whenever they think proper. Gen. Sts. c. 38, § 25. It cannot be supposed that they would be required by law to give their approval to a person, contrary to their own convictions of his general fitness, and whom they would feel bound and have the right to dismiss at once.

*Exceptions overruled.*